(160 App. Div. 373)

### CROCKER-WHEELER CO. v. GENESEE RECREATION CO.

(Supreme Court, Appellate Division, Fourth Department.   January 7, 1914.)

1. SALES (§ 473*)—CONDITIONAL SALES—BONA FIDE PURCHASERS—BURDEN OF PROOF.

The burden is on one claiming as a bona fide purchaser to bring himself within Personal Property Law (Laws 1909, c. 45 [Consol. Laws, c. 41]) art. 4, providing that every contract for the conditional sale of goods to be attached to a building shall be void as against subsequent bona fide purchasers of the premises, unless, before delivery, the contract is filed and indexed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. § 473.*]

2. SALES (§ 473*)—CONDITIONAL SALES.

Where personal property is conditionally sold with knowledge by the seller that it is to be placed in a building, so as to become a part thereof, a bona fide purchaser of the premises acquires good title as against the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

seller, unless the contract of conditional sale is filed as required by Personal Property Law (Laws 1909, c. 45 [Consol. Laws, c. 41]) art. 4.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. § 473.*]

3. FIXTURES (§ 4*)—TEST.

The test for determining whether fixtures retain their character of personalty after annexation is the intention and consent of the owner of the realty, and they become a part of the realty in the absence of agreement by such owner that they shall remain chattels.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 3, 6; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 3, pp. 2831–2846; vol. 8, p. 7664.]

4. FIXTURES (§ 35*)—EVIDENCE.

Evidence *held* to show that machinery which was placed in a building upon being conditionally sold did not become a part of the realty through its acceptance by the owner of the premises as a part of the realty.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 67–79; Dec. Dig. § 35.*]

5. SALES (§ 62*)—ENTIRE CONTRACT.

A contract for the sale of machinery, etc., could be severed and a separate agreement made as to a particular part of the machinery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179; Dec. Dig. § 62.*]

6. APPEAL AND ERROR (§ 977*)—DISCRETION OF TRIAL COURT—GRANTING OF NEW TRIALS.

The Appellate Division is reluctant to disturb an order of the trial court granting a new trial; such an order resting largely in the exercise of the trial judge's discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

Kruse, P. J., and Merrell, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by the Crocker-Wheeler Company against the Genesee Recreation Company. From an order (134 N. Y. Supp. 61) setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Reversed, and verdict reinstated.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Isaac Adler, of Rochester, for appellant.

Percival D. Oviatt, of Rochester, for respondent.

LAMBERT, J. This litigation, for the second time, comes before this court, and this appeal is from an order directing a third trial. The extensive litigation has been occasioned, not because of doubt as to the principles of law involved, so much as by reason of the confusion which has arisen in applying such principles to a somewhat intricate state of facts.

In form, the action is replevin, and it is sought therein to recover the possession or the value of three certain electrical generators. These machines were constructed by the plaintiff and sold by it to the James McDonnell Company, a contracting corporation of Rochester. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McDonnell Company was then engaged in the performance of a contract between it and the Genesee Amusement Company, for the electrical and steam equipment and plumbing of a building, then being erected by such amusement company. The consideration for such contract was therein expressed as a single lump sum of money for the entire undertaking. That general equipment included the installation of generators, such as those here involved, and it was for the express purpose of installation in this building that this purchase was made.

The sale to the McDonnell Company was evidenced by a conditional contract of sale, whereby the plaintiff sought to retain, in itself, the legal title to such machines, until full payment therefor was made, and a system of deferred payments of the purchase price was incorporated into the agreement.

The generators were installed in the building. Tests thereof developed a controversy between plaintiff and the McDonnell Company as to the compliance of same with the conditional contract, and between the McDonnell Company and the amusement company as to their compliance with the contract for the equipment of the building. Eventually, the amusement company settled its contractual obligations with the McDonnell Company on full, except that it retained therefrom the sum of $1,500 on account of claimed noncompliance of such machines with the equipment contract.

With matters in this situation, the amusement company became insolvent and was adjudged bankrupt; and its entire assets were sold in bankruptcy to three of its stockholders and directors, for a substantial sum. The three purchasers then organized the defendant corporation and transferred to it the properties and rights so purchased by them.

At the time of the installation of the machines, the real property upon which the building stood was incumbered by two mortgages, held by the Monroe County Savings Bank and one Kimball, respectively. Upon the first of such mortgages, moneys were advanced, subsequent to such installation. The junior mortgage, held by Kimball, was foreclosed, following the bankruptcy, and the premises were bid in by an agent of the defendant. Such purchaser immediately executed to Kimball a new mortgage for a like amount, and then transferred the title to the defendant, subject to such mortgage.

Plaintiff's claimed right of possession of the generators is founded upon the conditional contract of sale, under which it urges its attempted reservation of title thereto. That contract was never filed, as required by the Personal Property Law (Laws 1909, c. 45, art. 4.) But it must be conceded that, as between plaintiff on the one part, and the McDonnell Company upon the other, the form of the contract is sufficient to preserve the character of the generators as personal property, regardless of the manner of their affixation to the realty, and regardless of such nonfiling.

The defendant, however, rests its claims upon the contention that such machines became a part of the realty and came into its possession and ownership without notice of such conditional contract and for a

valuable consideration, and that thereby the defendant became an innocent purchaser thereof for value.

The Personal Property Law (Laws 1909, c. 45, art. 4) provides:

"Every such contract for the conditional sale of any goods and chattels attached to, or to be attached, to a building, shall be void as against subsequent bona fide purchasers or incumbrancers of the premises on which said building stands, and as to them, the sale shall be deemed absolute, unless, on or before the date of the delivery of such goods or chattels at such building, such contract shall be duly and properly filed and indexed."

[1] At common law, there was no necessity for filing a contract such as this, and the statute does not now express any such require- ment. It merely declares the unfiled contract void as against subsequent purchasers (and incumbrancers) for value and without notice thereof. It is thus seen that the statute is in derogation of the common law and declares a class of persons to be favored in law, by the failure to file the contract. It follows clearly that the burden of showing itself within such statute rests, in this case, upon the defendant. The defendant is claiming the advantage of that statute and must show same to be applicable.

At the conclusion of the evidence, the trial court held, as a matter of law, that the evidence did not warrant a finding by the jury that the amusement company was an innocent purchaser of these generators for value. That court did, however, submit as questions of fact the standing of the defendant recreation company, and the purchaser at the bankruptcy and the mortgage sales, as such innocent purchasers. Upon such questions, the jury found for the plaintiff and rendered a verdict awarding possession and assessing the value at $1,328 and interest.

At the time of the submission to the jury, plaintiff requested the court to direct a verdict in its favor, upon the ground that, as to two of the generators, no title ever became vested in the amusement company, by reason of the neglect and refusal of that company to accept such two generators. The value fixed by the jury, being almost exactly the agreed value of such two generators, it follows that, if plaintiff was entitled to that direction, the order appealed from should be reversed, and the verdict reinstated.

[2] Upon the record before us, I am convinced that plaintiff was entitled to such ruling. It is well settled, in this state, that when personal property has been sold, with knowledge by the vendor that it is to be placed in a building, in such manner as to become an integral part thereof, that then a bona fide purchaser of the premises acquires a good title as against the unfiled conditional contract. By its verdict, upon the questions submitted, the jury has determined that neither the defendant nor its predecessors, subsequent to the amusement company, have any standing as bona fide purchasers. That conclusion has ample support in the evidence, and eliminates all considerations other than the standing of the amusement company.

Undoubtedly, the amusement company might, either by silence or express declaration to that effect, have accepted these machines as a compliance with their contract, whereupon such might become a part of the freehold, through its election and by that manner of affixation.

But it is to be remembered that the McDonnell Company had assumed an express obligation to the amusement company (well known to plaintiff) to furnish and install generators of a prescribed and definite quality and capacity. Very clearly, the amusement company had the right to a reasonable test and examination of these machines, after installation, to determine their compliance with the agreed requirements. It was not bound to accept them without a test, and the subsequent acts of that company are to be construed with such right in mind.

[3] In Fitzgibbons Boiler Company v. Manhasset Realty Corporation, 125 App. Div. 764, 110 N. Y. Supp. 225, reversed in Court of Appeals on dissenting opinion of Scott, J., 198 N. Y. 517, 92 N. E. 1084, it was said:

"It was argued and held that the test as to whether or not the fixtures should retain their character of personal property after annexation to the realty was the intention and consent of the owner of the fee, and that in the absence of any agreement on his part that they should retain the character of chattels, or of such notice to him as would authorize an inference of his acquiesence, they became part of the realty."

That statement of the rule of law, applicable to such a situation, was recently reaffirmed by the Court of Appeals, in the case of Central Union Gas Co. v. Browning, 103 N. E. 822, in which case the opinion was filed December 16, 1913.

The application of that rule of law to the present controversy directs us to the inquiry of whether the amusement company did accept these machines and thereby elect to make them a part of the realty. For, if it did not, and on the contrary has rejected them, then it cannot be seriously contended that they ever became part of the freehold.

Upon this issue, the witness Hussey testified directly that "both the Genesee Amusement Company and the James McDonnell Company refused to accept these two larger generators." While this testimony may be open to criticism as being a conclusion of fact, yet nowhere in the record do we find such evidence either qualified or disputed.

Again, the generators were installed about January, 1908, and a test by actual operation was then made by the amusement company, and it was found that such did not conform to the requirements. Later and on August 13, 1908, at a meeting of the directors of the amusement company, a resolution was adopted, directing Sterns, the architect of the amusement company, to notify plaintiff to replace the defective generators at once, or that the amusement company would replace same at plaintiff's expense. Pursuant to such resolution, the amusement company by letter did direct Sterns to so notify plaintiff of the action of such directors and to further notify it that, unless it took definite action within ten days to make the generators complete, in accordance with the contract, the amusement company would consider the matter closed and would take steps to replace the machines with some of other make. Still later, the amusement company addressed a letter directly to the plaintiff, stating that the generators did not stand under test and could not carry the guaranteed load, and that they should be put into first-class condition at once, so they could be tested and the difficulty be settled.

Again, Mr. Wesp, president of the amusement company, testified that he was present at both of the directors' meetings mentioned upon the trial and at which Mr. Drake reported "the generators were not satisfactory and would not be accepted." And Mr. Frederich, a director, testified:

"Mr. Drake had reported that they were not satisfactory and they would not be accepted, and I remember him reporting that some money was held back from the McDonnell Company on account of their work not being satisfactory."

Mr. Drake, referred to by these witnesses, was one of the committee of the amusement company, in charge of the erection of the building, and was first its president and then treasurer and manager, and his evidence is to the like effect.

[4] With this evidence, entirely uncontradicted, it is plain that defendant has not met the burden upon it of showing that the generators did become a part of the realty, through acceptance thereof, as the basis of showing acquisition of same by the amusement company, as an innocent purchaser. On the other hand, the contrary is thus clearly established, and plaintiff was entitled to the direction requested.

[5] The trial court has set aside the verdict, upon the theory that the contract between the amusement company and the McDonnell Company was entire and covered many other matters than these machines, and that the reservation of $1,500, made upon the settlement between those parties, could not be held, as a matter of law, to be a reservation especially on account of these machines. Therein such court fell into error, for, even conceding the force of his argument, the undisputed facts in the case establish that the parties to that entire agreement did, as they lawfully might, sever that entire contract, and enter into a new arrangement, embodying only these defective machines. All other matters were adjusted, and the retention of the money clearly was on account of such generators. It is so testified by several witnesses, and such is the stipulation of the parties, found in the record, and it is nowhere qualified or contradicted.

[6] This court has always been reluctant to disturb orders of trial courts, setting aside verdicts, inasmuch as such rest so largely in the exercise of a sound discretion, founded upon the atmosphere of the trial. But in this instance the trial court, by his opinion, has made it plain that such order was made because of what he deemed a legal requirement for such course. And, it appearing that such was not sound, it becomes our clear duty to reverse such order and reinstate the verdict of the jury.

Order reversed, with costs and verdict of jury reinstated. All concur, except KRUSE, P. J., and MERRELL, J., who dissent.

KRUSE, P. J. (dissenting). In the absence of notice, either actual or constructive, to the Genesee Amusement Company, of the claim of the plaintiff that the title to the generators should not pass until paid for, I think it cannot be held as a matter of law that the generators did not become a part of the real estate. The evidence shows that the

plaintiff manufactured the generators for the specific purpose of lighting the particular building then in process of construction and knew that they were to be attached to the building and the land. If, under such circumstances, the generators were attached to the real property with the intention that they should become a part of the realty, without notice to the owner of the land of plaintiff's claim of retention of title, I think they became a part of the real estate and plaintiff has lost its right to detach and remove them from the land. If, upon the other hand, the Genesee Amusement Company had such notice, then the generators not only remained personal property, but the Genesee Amusement Company would not be a purchaser in good faith, even though it paid the McDonnell Company, its immediate contractors, for the generators.

I do not intend to suggest that if the plaintiff had removed the two defective and inefficient generators, although originally attached to the real estate under such circumstances as to make them a part of the realty, they would not have regained their character as personal property. But that was not done. Neither do I say that the plaintiff is not entitled to recover the purchase price for the generators from the McDonnell Company; permission to remedy or replace them having been refused. But that is quite apart from the question as to whether it is entitled to hold the generators under its conditional sale contract as against an owner who had no notice of the provisions in the contract retaining the title in the plaintiff.

I think the order should be affirmed.

MERRELL, J., concurs.