CUTLER MAIL CHUTE CO. v. CRAWFORD. (No. 7070.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

1. SALES ☞473—CONDITIONAL SALES—CHATTEL IN BUILDING—"ATTACHED."

A mailing chute and box, secured by screws to a backboard in a building in such a way that it could be removed by one man in about an hour's time without injury either to the building or to the chute, is not a chattel "attached" to the building, within Personal Property Law (Consol. Laws, c. 41) § 62, which makes a contract for the conditional sale of a chattel attached to a building void against subsequent bona fide purchasers or incumbrancers of the building, unless the contract is filed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. ☞473.

For other definitions, see Words and Phrases, First and Second Series, Attach.]

2. SALES ☞473—CONDITIONAL SALES—LEASE.

A contract, in form a lease for ten years of a mailing chute to be placed in the lessee's building, the reserved rental of which is less than 14 per cent. of the value of the chute, is not a conditional sale contract, which is void under Personal Property Law, § 62, as against subsequent bona fide purchasers, unless filed, though the lease contains a clause that, if default is made in any payment, the owner may declare the entire rental due and remove the chute from the building.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. ☞473.]

3. SALES ☞456—CONDITIONAL SALES—OPTION TO PURCHASE.

Nor does a clause in such contract, giving the lessee option to purchase at any time during four years at the full value and interest, less the amount of rent paid, where at the end of that time the cash payment to be made would be more than half the full value of the chute, show that

the contract was a conditional sale contract, and that the form was a mere subterfuge.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1327–1331; Dec. Dig. ⊕⇒456.]

4. SALES ⊕⇒480—CONDITIONAL SALES—BURDEN OF PROOF—BONA FIDE PURCHASER.

In an action by a seller under a conditional sale contract to recover chattels placed in a building, the burden is on the purchaser of the building to show that he is a bona fide purchaser of the chattels, and the production of· a warranty deed to the building and its appurtenances, which does not mention any chattels, does not establish that fact.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1439–1448; Dec. Dig. ⊕⇒480.]

Appeal from Trial Term, New York County.

Action by the Cutler Mail Chute Company against William Crawford. Judgment for defendant, and the plaintiff appeals. Reversed, and new trial granted.

The action was to recover the value of a mailing apparatus, consisting of a mail box and mail chute, which had been installed in a building known as the Forty-Fifth Street Exchange, at the instance of the then owner of the building. The defendant was a subsequent purchaser of the premises, and the owner thereof at the time the plaintiff sought to remove the box and chute. The apparatus consisted of a metal and glass chute 8 inches wide and 4 inches deep, constructed in sections and extending from the entrance floor of the building to the corridor of the top story. On the entrance floor was a metal box about 20 inches wide, 10 inches deep, and 36 inches high, in which letters which have been deposited in the chute through the openings therein at the several upper floors are permitted to drop. The mail box rested in a recess of the wall. The chute was let into the wall, so that only about 2 inches extended beyond the surface thereof, and was attached to a backboard by means of screws about seven-eighths of an inch long. The entire mailing apparatus could by one man, with the aid of a screw-driver, be removed in about an hour's time, and without appreciable injury to either the building or the apparatus.

The apparatus had been installed under a written agreement with the owner, which was substantially as follows: "The subscriber requests the Cutler Mail Chute Company * * * to furnish * * * under the terms and conditions herein set forth, and which he hereby promises and agrees to keep and perform, the Cutler mailing system, consisting of one U. S. mail chute * * * and a special U. S. mail box, * * * for the term of ten years from the first day of May, 1910, or when the U. S. collection service commences. And unless canceled by a written notice from either party to the other 30 days before the expiration of the above specified term of 10 years, this contract shall be understood as renewed for an additional term of one year, and so on for terms of one year each until canceled by a written notice from either party to the other party 30 days before the end of any of the terms so created; * * * and the subscriber agrees to pay to the said company for the use of the said * * * system the monthly rental of $12 payable quarterly in advance on the 1st days of January, April, July, and October of each year. The subscriber agrees: That the * * * system * * * shall be carefully used and all ordinary expenses of maintenance and repair shall be borne by the Cutler Mail Chute Company; * * * but all expenses rendered necessary by the fault or neglect of the subscriber or any other person shall be borne by him. * * * That upon the nonpayment of two quarters' rent the expense of the rental price for the entire term then remaining unpaid shall at the option of the Cutler Mail Chute Company immediately become due and payable, and said company shall have the right to remove the mail chute and box. * * * That upon the expiration of this lease the Cut-

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ler Mail Chute Company agrees to remove the mail chute and box from the premises without unnecessary delay. * * * "

In the same instrument there was a clause by which the company was to provide the backboard to which the chute and box were to be attached, and also the labor incident to the installing of the apparatus, for which the subscriber was to pay $180; the backboard, when installed, to become the property of the owner of the building. The agreement was to become a binding contract when accepted by the company. This instrument was dated January 20, 1910, was signed by the owner, and indorsed "Accepted" by the company. Accompanying the foregoing offer and acceptance, and of even date therewith, the plaintiff delivered to the former, duly signed by it, a further writing, which recited that "in the event of the execution of the above lease, * * * and in consideration thereof, we agree that if, at any time during four years from the beginning of the U. S. free collection service, the lessee desires to purchase the mail chute and box, * * * we will allow the amount of rental actually paid to apply on the purchase price, $1,045, after deducting from the amount of said rental interest at the rate of 6 per cent. per annum on the said purchase price from the time at which the U. S. free collection service was commenced to the date of purchase; and on receipt of the above in cash and the execution of our standard form of contract, we will cancel the lease and deliver a bill of sale."

The postal authorities began the collection of mail from the apparatus in question on October 13, 1910, from which time the mail box was secured by a lock, the only keys to which were in possession of the same authorities. The first quarter's rent or installment provided for by the foregoing agreement was the only payment made by the owner of the building under the contract, and, although the plaintiff frequently demanded the payments which accrued thereafter, none were made. The reasonable value of the chute and box was $1,045.

In pursuance of a contract theretofore made for the purchase of the building, but which contract was not offered in evidence, the defendant became the owner of the premises in which the mailing apparatus was installed on or about June 8, 1911, on which day he received from the owner of the premises, being the same corporation with which plaintiff's contract had been made, a full-covenant warranty deed in the usual statutory form, which deed conveyed the land and premises in question together with their appurtenances, but made no mention of any fixtures or chattels in, upon, or connected with the building. No other evidence was given of any sale or transfer of any such chattels. The record also disclosed further facts bearing on the questions of actual and implied notice to defendant of the plaintiff's contract, but as *these* questions were not passed upon by the court the facts relating thereto are omitted from this statement.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Frederick M. Brown, of New York City, for appellant.
Middleton S. Borland, of New York City, for respondent.

HOTCHKISS, J. [1] I think it is quite clear, particularly under the circumstances disclosed by the agreement, that the apparatus in question was not annexed to the building in such manner as to loss its character as personal property. Central Union Gas Co. v. Browning, 210 N. Y. 10, 103 N. E. 822; Fitzgibbons Boiler Co. v. Manhasset Realty Corp., 125 App. Div. 767, 110 N. Y. Supp. 225 (Scott, J., dissenting), reversed on dissenting opinion of Scott, J., 198 N. Y. 517, 92 N. E. 1084; Murdock v. Gifford, 18 N. Y. 28; McKeage v. Hanover Fire Ins. Co., 81 N. Y. 38, 37 Am. Rep. 471; Cosgrove v. Troescher, 62 App. Div. 123, 70 N. Y. Supp. 764. The apparatus thus remained a chattel,

and was not "attached" to the building in such manner as to bring it within that portion of section 62 of the Personal Property Law which was added by the amendment of 1904 (Laws 1904, c. 698). Central Union Gas Co. v. Browning, supra.

[2] The question remaining is whether the agreement under which the apparatus was installed constituted a conditional sale within the terms of the first paragraph of said section, which in effect provides that all conditional sales of chattels accompanied by delivery shall be void as against subsequent purchasers, pledgees, or mortgagees in good faith, unless the contract of sale or a copy thereof is filed, and other provisions of the Lien Law (Consol. Laws, c. 33) applicable to such contracts are duly complied with.

It is, of course, true that in every such case as the present the court is not bound by the mere form in which the parties have chosen to put their agreement, or the name by which they have been pleased to call it, and that the whole agreement and the circumstances surrounding the same are to be examined for the purpose of determining its true character. It is equally clear that a lease of chattels is not required to be in any particular form, but may be expressed by an exchange of writings or in other manner sufficient to constitute a binding obligation. With the exception of the single paragraph to which I shall hereafter refer, the writing first signed by the parties, and on which plaintiff's acceptance was indorsed, is in every material respect nothing more than a lease, with absolutely nothing to indicate an intention then or thereafter to convey any title. The rent received amounts to only about 13¾ per cent. per annum of the undisputed value of the apparatus, an amount so disproportionate to such value as to entirely exclude the suspicion that the rent was but a means of disguising periodical payments upon account of a purchase price, which payments, when wholly made, would automatically or otherwise vest title in the lessee or purchaser. The clause which provided that, upon the nonpayment of two quarters' rent, the balance of the entire rental price should at the option of the plaintiff become immediately "due and payable," and that plaintiff should thereupon have the right to remove the apparatus, is, at first blush, equivocal. But, on closer examination, its legal effect would seem to be abortive so far as it might be claimed to affect any right to purchase or any vesting of title in the purchaser or lessee.

Assuming, as I do, that the agreement imports an obligation on the part of the lessee to pay the rent for the entire period, it is clear that, should the plaintiff on default have exercised the option to declare the entire amount of rent accruing during the whole period to be then immediately due and payable, he could not have removed the apparatus from the premises, although the agreement assumes to give him that right. Had such option been exercised, and had the lessee paid the entire rent in one payment, his right to have the use of the apparatus until the end of the term and to prevent its removal cannot be questioned. But the agreement contains nothing which would indicate that, had such payment been made, the lessee would have become the owner of the apparatus or would have had any other right with re-

spect thereto than to use it to the end of the term without further payment.

[**3**] It remains to consider the effect of the cotemporaneous agreement containing the option to buy. This option is upon the following terms: (1) It must be exercised within four years from the time when use of the apparatus should begin. (2) The payment then to be made is to be $1,045, the agreed value of the apparatus, plus 6 per cent. interest thereon from the date when the use began, minus the total amount of rent paid to date. A simple computation shows that, if the option had not been exercised until the end of four years, such payment would have amounted to $576, as against a purchase price and interest aggregating $1,285.80, leaving a net payment of $707.80 in excess of the rentals and equaling about seven-tenths of the original purchase price. Had the option been exercised at an earlier date, the cash payment would have been proportionately greater. These figures dissipate any suspicion that the term rent and the actual rent expressed to be paid up to the time the option might have been exercised so nearly approximated the purchase price as to show that the so-called rent was a mere substitute and cover for installment payments. In this respect the agreement is both in its actual terms and in the operation of its payments materially different from that considered in the Central Union Gas Company Case, supra, where the agreement provided that, after six annual consecutive payments had been made, the chattels were to become the property of the lessee without any additional payment whatsoever.

The learned court below seems to have disposed of the case on the theory that in this state any lease of chattels with an option to the lessee to buy is per se a conditional sale. It is perhaps not surprising that this or any other theory should be evolved from the mass of more or less apparently contradictory decisions to be found in the state and federal reports. This contrariety of result has largely been due to confusion arising from an attempt in a given case to compare the contract in that case with the contract in some other case, and from a supposed analogy of facts to draw an analogous conclusion of law. But, where the essential ingredients of a contract have been once determined, it should not be a difficult task to decide what is its legal effect. Leases and options to buy chattels are still in this state as distinct as they ever were, and their incorporation into one agreement does not work a fusion of the two contracts. Manifestly an option to buy, which the optionee is at liberty to exercise or not as he chooses, is different from an option to return a thing purchased if the buyer so elects. Sturm v. Boker, 150 U. S. 312, 324, 14 Sup. Ct. 99, 37 L. Ed. 1093.

The decisive question is still, as it ever was: What was the intent of the parties? As was said by Baldwin, J., in Lambert Hoisting Eng. Co. v. Carmody, 79 Conn. 419, 424, 65 Atl. 141, while the dress in which parties clothe their contract is not controlling, "the insertion in a contract of bailment or lease of a provision giving an option of purchase at a fixed price, and making, in case of its exercise, payments previously made in the form of rent applicable to the purchase price, does not, as matter of law, turn the bailee or lessee into a conditional ven-

dee. His character and position depend on the real intent and purpose of the contract."

[4] The plaintiff should have recovered for still another reason: The defendant wholly failed to show that he was a purchaser bona fide or otherwise of the apparatus in question. The burden to prove a purchase was upon him. Crocker-Wheeler Co. v. Genesee Recreation Co., 160 App. Div. 373, 145 N. Y. Supp. 477. His only evidence of title was his deed, which did not purport to transfer to the purchaser any chattels whatsoever.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.