PRUDENTIAL WESTCHESTER CORP., Appellant, *v.* MATILDE TOMASINO, Respondent.

First Department, April 10, 1958.

490

*Bruno Schachner* of counsel (*Norman M. Sheresky* with him on the brief; *William Gold,* attorney), for appellant.

*Morris Karnes* of counsel (*Alfred F. Sulla, Jr.,* attorney), for respondent.

BOTEIN, P. J. This is an appeal from the trial court's dismissal of the complaint after both parties had presented their respective cases.

The appeal turns on the interpretation of a lease entered into between plaintiff, a theatre operator, and defendant, the owner of a building containing stores and a motion picture theatre. Pursuant to this lease, defendant agreed to rent the entire building to plaintiff for a term of 21 years at a stipulated rental.

The lease referred to the contemporaneous purchase by plaintiff of the theatre's furniture, fixtures, and equipment, title to which was to be retained by plaintiff during the life of the lease. This personal property was to be repaired or replaced by plaintiff as necessary, and was to revert back to the defendant landlord when the lease came to an end by reason of the expiration of the term or the tenant's default. The lease further provided that if the property became unusable through destruction, failure to make major structural repairs, or condemnation for public use (in other words, through no fault of the tenant), then the landlord would be obliged to pay the tenant the sum of $35,000, less 5% for each expired year of the lease. On the day the lease took effect, defendant landlord, in consideration of the sum of $35,000 paid by the tenant, executed a bill of sale for the equipment to be used in the theatre.

Three years later a dispute arose between the parties, and the tenant elected to terminate the lease, refusing to pay any further rent. It is not claimed that any of the contingencies

enumerated in the lease entitling the tenant to payment had occurred. The tenant nevertheless brings this action to compel the landlord to return to it the sum of $33,250, setting forth three alternative causes of action in its complaint.

The first asserts that the defendant has been unjustly enriched by retaining the " unconsumed portion " of the $35,000, in violation of an alleged oral agreement that the $35,000 was in actuality to be treated as an advance payment of rent to be consumed at the rate of 5% per annum, with any unconsumed balance to be repaid in the event of termination of the lease prior to the end of the term. The second cause of action is for the alleged conversion of the furniture and fixtures which defendant refused to allow plaintiff to take on the termination of the lease; and the third cause of action alleges that the $35,000 paid by plaintiff to defendant was an advance deposit of rent which, under section 233 of the Real Property Law, defendant was obligated to hold as a trust fund, but which was commingled with her personal funds and unlawfully converted.

The second cause of action may be disposed of readily. No attempt was made to prove the value of the chattels allegedly converted, nor did plaintiff demonstrate any right thereto in the face of the explicit provision in the lease that upon its termination title to those chattels would vest in the landlord.

In support of its first cause of action, plaintiff made no effort whatsoever upon the trial to prove an agreement for the payment of the $35,000 as advance rental or security, separate and apart from what could be distilled from the lease and bill of sale. Plaintiff conceded at the trial and argues on appeal that the documents are unambiguous. We agree with this contention, so that their construction rests exclusively with the court, and must be decided as a matter of law (*Bethlehem Steel Co.* v. *Turner Constr. Co.*, 2 N Y 2d 456, 460; *General Phoenix Corp.* v. *Cabot*, 300 N. Y. 87). The documents, however, clearly reflect nothing more than a qualified sale, but the sale nevertheless, of equipment essential to the conduct of the business plaintiff contemplated operating in the leased premises.

It may be that the lease and bill of sale were the documentary means whereby the parties sought to implement and at the same time disguise the agreement alleged in the complaint; but such an agreement cannot be wrung from the documents alone, and no other evidence of such an agreement was sought to be introduced.

In relation to the third cause of action, plaintiff proved that defendant had commingled and spent the $35,000 as if they were her own funds, but failed to show that this was wrong.

Plaintiff urged that the $35,000 payment was required to be held as a trust fund by section 233 of the Real Property Law, and that this requirement could not be waived. While the court is not bound by the label which the parties applied to the payment and may examine the true nature of the transaction (*Matter of New York World-Telegram Corp.* v. *McGoldrick*, 298 N. Y. 11; *Cutler Mail Chute Co.* v. *Crawford*, 167 App. Div. 246), the payment here bore none of the distinguishing characteristics which would render section 233 applicable. There was no proof to show that it was either a deposit as security for the performance of the contract, or that it was an advance to be applied to payments on the contract when due (cf. *Mallory Associates* v. *Barving Realty Co.*, 300 N. Y. 297; *Planetary Recreations* v. *Kerns, Inc.*, 184 Misc. 340). A security deposit may be retained by the landlord only to the extent of damages sustained, and the balance must be returned (*Caesar* v. *Rubinson*, 174 N. Y. 492). However, here the payment was in exchange for equipment which the parties agreed could be retained *in toto* by the landlord upon the tenant's default as liquidated damages.

Nor is there any indication that the $35,000 plaintiff gave in exchange for the bill of sale was to be applied under the lease to payments that would become due in the future. The lease contained no reference to the $35,000 paid by plaintiff, no directions for its application, and no restrictions on its use. It provided only that the landlord pay to the tenant as liquidated damages in the event of condemnation, destruction, or failure to make major structural repairs the sum of $35,000 less 5% for each year the lease had run. Nothing was said about a sum being held in trust for such contingencies. Plaintiff would have merely a general claim against defendant, although as security the lease accorded it a lien on the premises and on any proceeds the defendant might receive from insurance or condemnation. Such a lien would likewise be entirely unnecessary if the sum plaintiff paid for the items enumerated in the bill of sale was to be held in trust. The parties having agreed that plaintiff was to be repaid only in the event of contingencies rendering the building unusable for plaintiff's business, and the complaint alleging only that plaintiff elected to terminate the lease, there was no obligation on the part of the defendant to pay plaintiff the $33,250 demanded.

Because it was paying for chattels it was entitled to retain only during the life of the lease, plaintiff argues that the entire transaction as set forth in the documents must cloak an advance deposit. The transaction can as readily and reasonably be

explained as the price plaintiff was paying for the acquisition of a going business, in addition to its future obligations for rent under the lease; or as a sum paid to induce the defendant to make certain repairs prior to plaintiff taking over; or as an attempt to place part of defendant's profits on a capital gain basis for tax purposes. These purposes are not inconsistent with the provisions actually recited in the lease, while plaintiff's contentions would require that the specific agreement recorded in that document be completely ignored.

Both parties were represented by attorneys and dealt with each other at arm's length. They did not use any standard form lease, but worked out a carefully worded agreement detailing numerous provisions and contingencies, all embodied in a 31-page document. The documents are regular on their face, and purport to show a sale of chattels, and a lease with mutual provisions for liquidated damages upon the occurrence of specified conditions. The court may not write into the contract other and different conditions which the parties do not choose to insert (*Raner* v. *Goldberg,* 244 N. Y. 438, 442), for the intent of the parties where the documents are clear and unambiguous can be distilled only from the terms of the written agreement (*Nichols* v. *Nichols,* 306 N. Y. 490).

If plaintiff contended that the transaction was not all it purported to be on its face, then the burden was on plaintiff to prove that contention (*Seidlitz* v. *Auerbach,* 186 App. Div. 7, 13, revd. on other grounds 230 N. Y. 167; *Browning* v. *Fox,* 183 App. Div. 778). Yet, apart from the documents themselves, as to which plaintiff sought no reformation, it offered only defendant's tax returns as proof of the agreement it alleged. Only if there had been some showing of such alleged agreement could the tax returns conceivably have been material or relevant. Without proof of such agreement, the most that could be inferred from the rejected exhibit was the totally unrelated fact that defendant had filed a true or false tax return. Furthermore, as stated above, the documents were unambiguous, and there was no need for resort to the contemporaneous practical construction by any of the parties as an aid to construction (*Sattler* v. *Hallock,* 160 N. Y. 291, 301).

In view of the foregoing, we find it unnecessary to pass upon the question of whether certain proceedings in the Justice's Court of the Town of Harrison are *res judicata* insofar as plaintiff's present claim is concerned, as alleged in an affirmative defense.

The complaint was properly dismissed, and the judgment appealed from should be affirmed, on the law, with costs.

VALENTE, J. (dissenting).  In affirming the dismissal of the complaint by the Trial Justice at the close of the case and before submission to the jury, a premium has been placed on the ingenuity of a landlord in disguising a security transaction in the form of a seemingly innocuous bill of sale.  The lease and bill of sale, when read together, are not so unequivocal as to compel a holding, as a matter of law, that the parties did not intend a security arrangement.  Clearly there was a question presented here for the jury as to the intent of the parties.  This was to be gathered not only from the language and form of the agreements but also from the surrounding circumstances, including the relationship of the parties and the subject matter of the contracts.

Plaintiff leased a fully equipped theatre from defendant for a term of 21 years.  The evidence, prima facie, could have been determined by a jury to demonstrate that instead of an outright provision for security or advanced rental, $35,000 was transferred to the landlord under the guise of a bill of sale of the personalty and fixtures used in the operation of the premises and theatre.  But under the lease, the same personalty which the landlord purported to sell was to be returned to the landlord at the termination of the lease.  Moreover, the $35,000 was to be returned to the tenant, less 5% for each expired year, if the lease terminated before the expiration of the 21-year term.

Section 233 of the Real Property Law, dealing with security deposits under leases, was enacted to prevent depletion of funds deposited with a lessor.  Its provisions may not be avoided by subterfuge, and courts should pierce the form that an attempt at circumvention takes to arrive at the real substance of particular agreements so as to avoid unjust enrichment, an unconscionable penalty or conversion.

We do not have to speculate on the advantages which accrued to the landlord in dressing the security for the lease in its bill of sale garb.  Certainly the landlord's tax returns, which the court below erroneously excluded, would have given more than a mere hint of the landlord's real purpose.

In summary, we think that enough evidence was presented to create a jury question as to whether the transaction herein was an attempt to circumvent the provisions of section 233 of the Real Property Law, and the court below erroneously took that issue away from the jury.

In view of the conclusion of the court below as to the insufficiency of the evidence, as a matter of law, the defense of *res judicata* was not ruled upon. An examination of the record in

the Justice's Court, Harrison, New York, whose judgment is the basis of the landlord's defense of *res judicata,* indicates that the proceedings, insofar as they touched on the tenant's claim to the return of the security, were so confused as to create an uncertainty as to what was actually litigated. The judgment itself does not specifically indicate a disposition of plaintiff's claims here. Moreover, even culling from the confused presentation of the issues in that case the elements which have some definiteness, we are convinced that the merits of the instant suit were never adjudicated.

We would therefore reverse the judgment below and grant a new trial, with costs to abide the event.

BREITEL and McNALLY, JJ., concur with BOTEIN, P. J., VALENTE, J., dissents in opinion, in which STEVENS, J., concurs.

Judgment affirmed, on the law, with costs to the respondent.