JA-MO ASSOCIATES, INC., Respondent, *v.* 56 FULTON ST. GARAGE CORP., Defendant-Appellant and Third-Party Plaintiff; DANIEL GREENBERG et al., Third-Party Defendants.

First Department, June 20, 1968.

*Melvin A. Albert* of counsel (*Philip Robbins* with him on the brief; *Gordon, Brady, Keller & Ballen,* attorneys), for appellant.

*Max Steinberg* for respondent.

EAGER, J. P. In an action by a former tenant against its landlord, the defendant appeals from an order which granted plaintiff's motion for summary judgment on its first cause of action to recover the amount of an alleged security deposit and which denied defendant's cross motion to dismiss the complaint as to the several alleged causes of action.

The parties entered into a written lease on January 31, 1967 for the renting by the tenant from the landlord of a garage and car parking building, for a term to commence February 1, 1967 and to end January 31, 1988, at a net annual rental of $96,000, payable in equal monthly installments. Simultaneously, the parties executed a rider to the lease containing, among others, a provision as follows: " Tenant agrees to, and does, lend Landlord the sum of $40,000. This loan is evidenced by a mortgage note, and secured by a mortgage on the demised premises, which said mortgage and mortgage note provide for repayment by Landlord to Tenant of the sum of $4,000 on the first day of the eleventh (11th) year following the date of the commencement of this lease  *  *  *. As security for the performance of this lease, Tenant agrees to, and does, assign said mortgage note and said mortgage to the Landlord ".

It was further provided that in the event of a default in a payment of interest or principal due under the mortgage, the tenant would have the right to deduct the amount of any such payment from the current or next ensuing monthly installment of rent; also, that, in the event of a default by the tenant under the lease, any balance then payable under the mortgage might be applied against any damages suffered by the landlord.

The mortgage to cover the alleged loan was executed and delivered by the landlord to the tenant. It provided that the principal indebtedness was to be paid in annual installments of $4,000 commencing on February 1, 1978, with further provision that interest at 4% per annum was to be paid annually on the unpaid principal balance. The mortgage was assigned by the tenant to the landlord with the provision that the assignment should not merge with the fee and that it " is being delivered by the assignor to the assignee as security for the per-

formance of obligations under a lease dated as of February 1, 1967 ''.

The tenant took possession of the premises on February 1, 1967 and remained in possession until May 17, 1967. Rent was paid for the months of February and March notwithstanding the tenant, upon taking possession, immediately discovered the existence of alleged latent defects in the elevator and vehicle transfer equipment of the building. The tenant, however, refused to pay the rent for April, and summary proceedings were instituted against it by the landlord in Civil Court. Thereafter, on stipulation of settlement by the parties, the landlord obtained possession of the premises on May 18, 1967 pursuant to a warrant of dispossess. The said stipulation in relevant part provided: '' This agreement of settlement is subject to the further agreement between the parties that the final judgment to be entered hereon shall be without prejudice or waiver or adjudication of the rights of the landlord or tenant; not res judicata to any issue, defense or counterclaim that may be raised by either party in this proceeding or any other action or any defense that may have been raised or asserted in this court ''.

Subsequently and within the 60-day period as provided by subdivision 2 of section 747 of the Real Property Actions and Proceedings Law, the tenant instituted this action against the landlord.

The first cause of action seeks recovery of the sum of $40,000 (represented by the mortgage) alleged to have been deposited by the tenant with the landlord as security for the performance of the terms of the lease. The second alleged cause of action seeks rescission and cancellation of the lease upon the ground of alleged fraudulent concealment of latent defects in the vehicle elevator and vehicle transfer apparatus, including mechanical and structural defects. The third alleged cause of action seeks rescission and cancellation of the lease on the ground that the letting was in violation of the approved plans and amendments to said plans, filed with the Department of Buildings of the City of New York, with reference to the elevator and transfer apparatus. It is conclusively established, however, by the documentary evidence and the undisputed facts that all three causes of action are devoid of any merit.

The first cause of action to recover the sum of $40,000 as a security deposit is clearly unsupportable. The provisions of section 7–103 of the General Obligations Law are inapplicable to the transaction alleged and as established by the agreement of the parties. The parties abandoned the original purpose, as proposed in the tenant's letter of intent, for a deposit of money

as security for the performance of the obligations of the lease. The landlord made known to the tenant that it required a loan of $40,000 to pay off various debts and obligations in order to enable it to acquire title to the premises and to be in a position to enter into the proposed lease. The unambiguous terms of the written instruments make undisputably clear that the loan was actually a part of the consideration for the lease and that the sum was not deposited as security. Certainly, the tenant is bound by, and may not contradict or evade the plain effect of, the provisions of the rider to the lease, the mortgage and assignment of mortgage. Those documents conclusively establish that the landlord was not required to hold the sum loaned as security in trust pursuant to the provisions of section 7–103.

"While the court is not bound by the label which the parties applied to the payment and may examine the true nature of the transaction (*Matter of New York World-Telegram Corp.* v. *McGoldrick,* 298 N. Y. 11; *Cutler Mail Chute Co.* v. *Crawford,* 167 App. Div. 246), the payment here bore none of the distinguishing characteristics which would render section 233 [of the Real Property Law — now section 7–103 of the General Obligations Law] applicable." (*Prudential Westchester Corp.* v. *Tomasino,* 5 A D 2d 489, 493, affd. 6 N Y 2d 824.) There was no intention that the landlord hold the money as security.

Although the mortgage securing the tenant's loan was assigned by it to the landlord as security for the performance of the lease, the true nature of the transaction was not thereby converted into one for the deposit of money as security. The assigned mortgage was not cash security which could be commingled by the landlord with his other assets. The mortgage transaction was itself a means of furnishing the landlord with security in lieu of that provided by section 7–103 aforesaid.

We have not overlooked the provisions of the statute which prohibit a lease "provision" that "waives any provision of this section" (§ 7–103, subd. 3). There is no evidence that the loan by the tenant to the landlord, including the mortgage arrangement, was other than a bona fide loan, with the right of the landlord to use the proceeds thereof "for the very purpose of enabling him to bring the leasehold into existence". Thus, it may not be said that this was a "subterfuge" or a device to circumvent the non-waiver provisions of the statute. (See dissenting opn. of FULD, J. in *Mallory Assoc.* v. *Barving Realty Co.,* 300 N. Y. 297.)

*Mallory Assoc.* v. *Barving Realty Co.* (*supra*), cited by Special Term as supporting a recovery by plaintiff on its first cause of action, is clearly distinguishable. The question pre-

sented in *Mallory* was whether the complaint stated facts sufficient to constitute a cause of action, and it was noted in the opinion of the court (CONWAY, J.) that the alleged facts supporting the contention that (p. 302) " the so-called security deposit was really a loan * * * do not appear in the complaint and that is the only document with which we are here concerned." In the case at bar, however, the fact of a bona fide loan is established by the written documents and the undisputed facts presented on the motion for summary judgment.

The second and third causes of action are also clearly unsupportable. The tenant chose to accept the premises in their condition at the time of leasing (see *Lipbro Realty Corp.* v. *Eichler,* 207 Misc. 839). The tenant, in a letter of intent signed prior to the execution of the lease, expressly acknowledged that it had " made a full and complete examination of the premises, and our lease with you is on the basis that we are renting the premises ' as is '." The lease itself provided that the tenant accepted " the buildings and improvements and any equipment on or in the demised premises in their existing condition and state of repair, and Tenant covenants that no representations, statements, or warranties, express or implied, have been made by or on behalf of Landlord in respect thereof, in respect of their condition, or the use or occupation that may be made thereof, *and that Landlord shall in no event whatsoever be liable for any latent defects therein.*" (Emphasis supplied.) Furthermore, the tenant expressly agreed that it would " at all times during the term, and at its own cost and expense, put, keep, replace and maintain in thorough repair * * * all buildings and improvements on the demised premises * * * and their full equipment and appurtenances and movable trade fixtures, both inside and outside, structural and non-structural, extraordinary and ordinary, seen or unforeseen howsoever the necessity or desirability for repairs may occur, *and whether or not necessitated by wear, tear, or defects, latent or otherwise* ". (Emphasis supplied.) It was further agreed that the landlord should " in no event be required to make any alterations, rebuildings, replacements, changes, additions, improvements or repairs during the term ", and that the lease " contains the entire agreement between the parties and cannot be changed or terminated orally, but only by an instrument in writing executed by the parties."

The foregoing writings and undertakings by the tenant conclusively negate the existence of actionable misrepresentations or fraudulent concealment on the part of the landlord or reliance thereon by the tenant. Thus, there are lacking essential ele-

ments of a valid cause of action. The parties dealt at arm's length, and there being no evidence of any affirmative misrepresentation, act or conduct on the part of the landlord tending to deceive the tenant, the tenant's representations and covenants preclude a successful claim of fraud. (See 24 N. Y. Jur., Fraud and Deceit, § 106; *Perin* v. *Mardine Realty Co.*, 5 A D 2d 685, affd. 6 N Y 2d 920.)

Finally, the existence of the alleged violation of the approved and filed building plans does not furnish grounds for a rescission of the lease. If a violation existed, the tenant assumed the responsibility for such alterations or repairs as would be required to overcome the violation. In addition to the tenant's agreement to take the premises " as is " and its general covenant to repair, noted aforesaid, the tenant further expressly agreed that it would, " at its own cost and expense, promptly observe and comply with all * * * requirements * * * of the federal, state, county and municipal governments and * * * of all their respective departments, bureaus and officials * * * whether such * * * requirements * * * relate to structural alterations, changes, additions, improvements, requirements or repairs, either inside or outside, extraordinary or ordinary, seen or unforeseen, or otherwise [including] requirements or repairs incident to or as a result of any use or occupation thereof, or otherwise * * * and whether the same are in force at the commencement of the term or may in the future be passed, enacted or directed." The tenant, being bound to make any repairs or alterations necessary for compliance with the requirements, if any, of the building plans, may not complain of a violation thereof.

The order, entered January 9, 1968, should be reversed, on the law, with costs and disbursements, plaintiff's motion for summary judgment on the first cause of action denied, defendant's motion for summary judgment granted, the complaint dismissed, with taxable costs, and the action severed and continued as to the counterclaims set forth in the answer of the defendant.

STEUER, CAPOZZOLI, McGIVERN and RABIN, JJ., concur.

Order entered on January 9, 1968, unanimously reversed, on the law, with $50 costs and disbursements to the appellant, plaintiff's motion for summary judgment on the first cause of action denied, defendant's motion for summary judgment granted, with $10 costs, the complaint dismissed, and the action severed and continued as to the counterclaims set forth in the answer of the defendant, and the Clerk is directed to enter judgment in favor of the defendant-appellant dismissing the complaint.